UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------
**JOE HAND PROMOTIONS, INC.,**

                                              **COMPLAINT**

Plaintiff,

                                              Civil Action No.

    -against-

GARY GUZMAN, Individually, and as officer, director,
shareholder, principal, manager and/or member of BROOKLYN
DRIP LLC d/b/a BK DRIP,

and

BROOKLYN DRIP LLC d/b/a BK DRIP,

Defendants.
-------------------------------------------------------------------

      Plaintiff, **JOE HAND PROMOTIONS, INC.,** (hereinafter "Plaintiff"), by their attorneys, LONSTEIN LAW OFFICE, P.C. complaining of the Defendant herein respectfully sets forth and alleges, upon information and belief, as follows:

### JURISDICTION AND VENUE

1. This is a civil action seeking damages for violation of 47 U.S.C. §§ 553 or 605, et seq. (The "Telecommunications Act") and for copyright infringement under the copyright laws of the U.S. (17 U.S.C. §101, et seq.).

    2. This Court has jurisdiction under 17 U.S.C. §101, et seq. and 28 U.S.C. Section §1331, which states that the district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States; and 28 U.S.C. Section §1338(a) (copyright).

1

3. Upon information and belief, venue is proper in this court because, <u>inter alia,</u> a substantial part of the events or omissions giving rise to the claim occurred within Kings County, which is within the Eastern District of New York  (28 U.S.C. § 1391(b) and 28 U.S.C. §112(c)).

4. This Court has personal jurisdiction over the parties in this action. Defendants to this action had or has an agent or agents who has or have independently transacted business in the State of New York and certain activities of Defendants giving rise to this action took place in the State of New York; more particularly, Defendants' acts of violating federal laws and the proprietary rights of Plaintiff, as distributor of the satellite programming transmission signals took place within the State of New York.  Moreover, upon information and belief, Defendants have their principal place of business within the State of New York; thus, this Court has personal jurisdiction over Defendant.

## THE PARTIES

5. The Plaintiff is a Pennsylvania Corporation with its principal place of business located at 407 East Pennsylvania Boulevard, Feasterville, Pennsylvania 19053.

6. By contract, Plaintiff was granted the exclusive rights of distribution and public performance as to commercial establishments for the Wilder vs. Ortiz II Match, including all undercard matches and the entire television Broadcast, scheduled for November 23, 2019, via closed circuit television, encrypted "IPTV", cable or via encrypted satellite signal (hereinafter referred to as the "Broadcast").

7. Upon information and belief the Defendant, GARY GUZMAN resides at 89 Ridgewood Avenue, Brooklyn, NY 11208.

8. Upon information and belief the Defendant, GARY GUZMAN was the officer, director, shareholder and/or principal of BROOKLYN DRIP LLC d/b/a BK DRIP, and is doing business as

BK DRIP located at 1249 Myrtle Avenue, Brooklyn, NY 11221 (hereinafter referred to as the "Establishment").

9. Upon information and belief the Defendant, GARY GUZMAN, was the individual with supervisory capacity and control over the activities occurring within the Establishment on November 23, 2019.

10. Upon information and belief the Defendants, GARY GUZMAN and BROOKLYN DRIP LLC, received a financial benefit from the operations of BK DRIP, on November 23, 2019

11. Upon information and belief, Defendant, GARY GUZMAN, was the individual with close control over the internal operating procedures and employment practices of BROOKLYN DRIP LLC on November 23, 2019.

12. Upon information and belief, Defendant, GARY GUZMAN, was present at the Establishment during the exhibition of the Broadcast on November 23, 2019.

13. Upon information and belief, Defendants, GARY GUZMAN and BROOKLYN DRIP LLC, authorized the exhibition of the Broadcast at the Establishment on November 23, 2019.

14. Upon information and belief, Defendants, GARY GUZMAN and BROOKLYN DRIP LLC, received a commercial benefit by not paying the commercial licensing fee to the Plaintiff for the Broadcast and obtaining same through alternative means.

15. Upon information and belief, the Establishment known as BROOKLYN DRIP LLC had an estimated fire code occupancy of 1-100 people on November 23, 2019.

16. Upon information and belief, the Defendant, BROOKLYN DRIP LLC, is a business entity, the exact nature of which is unknown, having its principal place of business at 1249 Myrtle Avenue, Brooklyn, NY 11221.

17. Upon information and belief the Defendant, BROOKLYN DRIP LLC is a limited liability company licensed to do business in the State of New York and was doing business as BK DRIP.

## COUNT I

18. Plaintiff hereby incorporates by reference all of the allegations contained in paragraphs "1" through "17", inclusive, as though set forth herein at length.

19. By contract, Plaintiff was granted the right to distribute the Wilder/Ortiz II program (this includes all undercard bouts and the entire television broadcast) scheduled for November 23, 2019 via closed circuit television and via encrypted satellite signal. Said event originated via satellite uplink and was subsequently re-transmitted to cable systems and satellite companies via satellite signal (hereinafter referred to as the "Program").

20. Pursuant to the contract, Plaintiff entered into subsequent agreements with various entities in the State of New York, allowing them to publicly exhibit the Program to their patrons.

21. Plaintiff expended substantial monies in consideration of the aforementioned agreement to transmit the Program to those entities in the State of New York, which in turn, entered into agreements with Plaintiff to exhibit the Program to their patrons.

22. In order for anyone to obtain the Broadcast through a website intended for private, non-commercial viewing, an individual purchaser would be provided with terms of service which specifically provide for **non-commercial, personal use only.**

23. Upon information and belief, with full knowledge that the Program was not to be received and exhibited by entities unauthorized to do so, the Defendants and/or their agents, servants,

workmen or employees unlawfully intercepted, received and/or de-scrambled said satellite signal and did exhibit the Program at the above-captioned address at the time of its transmission willfully and for purposes of direct or indirect commercial advantage or private financial gain.

24. Upon information and belief, Defendants and/or their agents, servants, workmen and/or employees intercepted Plaintiff's signal and/or used a device to intercept Plaintiff's Broadcast, which originated via satellite uplink and then re-transmitted via satellite or microwave signal to various cable and satellite systems. There are multiple illegal and unauthorized methods of accessing the Broadcast, including but not limited to the traditional ways of pirating a broadcast (1) splicing an additional coaxial cable line or redirecting a wireless signal from an adjacent residence into a business establishment, de-crypt, unscramble and receive the closed circuit, "IPTV", cable or satellite Broadcast; (2) commercially misusing cable or satellite by registering same as a residence when it is, in fact, a business; or (3) taking a lawfully obtained box or satellite receiver from a private residence, into a business. Recently emerging over-the-top "OTT" technologies, used for the delivery of film and TV content via the internet, such as (1) Broadband or internet broadcast; and/or (2) Live Social Media Streaming ("Nano-Piracy") are additional methods in which pirated material can be obtained without requiring users to subscribe to a traditional cable or satellite pay-tv service such as Comcast, DIRECTV or Time Warner Cable and are readily available to anyone with a Smartphone. The misuse of OTT technology can allow commercial misuse of residential broadcasting feeds through the internet from anywhere in the world. Each of the above described methods would allow Defendants to access the Broadcast unlawfully and without Plaintiffs authorization. Prior to engaging in discovery, Plaintiff is unable to determine the manner in which Defendants obtained the Broadcast. However, it is logical to conclude that Defendants utilized one of the above described

methods or another to intercept and exhibit the Broadcast without entering into an agreement to obtain it lawfully from Plaintiff, the legal rights holder for commercial exhibition.

25. 47 U.S.C. §605 (a) prohibits the unauthorized reception and publication or use of communications such as the transmission for which plaintiff had the distribution rights thereto.

26. By reason of the aforementioned conduct, the aforementioned Defendants willfully violated 47 U.S.C. §605 (a).

27. By reason of the aforementioned Defendants violation of 47 U.S.C. §605 (a), Plaintiff has a private right of action pursuant to 47 U.S.C. §605.

28. As a result of the aforementioned Defendants willful violation of 47 U.S.C. §605 (a), Plaintiff is entitled to damages in the discretion of this Court, under 47 U.S.C. §605 (e)(3)(C)(i)(II) and (ii) of up to $100,000.00 as to each Defendant.

29. Pursuant to 47 U.S.C. §605, Plaintiff is also entitled to an award of full costs, interest and reasonable attorney's fees.

## COUNT II

30. Plaintiff hereby incorporates paragraphs "1" through "29" as though fully set forth herein.

31. Upon information and belief, with full knowledge that the Program was not to be received and exhibited by entities unauthorized to do so, the Defendants and/or their agents, servants, workmen or employees did exhibit the Program at the above-captioned address at the time of its transmission willfully and for purposes of direct or indirect commercial advantage or private financial gain.

32. 47 U.S.C. §553 prohibits the unauthorized reception, interception and exhibition of any

communications service offered over a cable system such as the transmission for which Plaintiff had the distribution rights thereto.

33. Upon information and belief, the Defendants individually, willfully and illegally intercepted said Program when it was distributed and shown by cable television systems.

34. By reason of the aforementioned conduct, the Defendants willfully violated 47 U.S.C. §553, thereby giving rise to a private right of action.

35. As a result of the Defendants' violation of 47 U.S.C. §553, Plaintiff is entitled to damages in an amount in the discretion of this Court, of up to $50,000.00, plus the recovery of full costs, interest and reasonable attorney's fees.

## **COUNT III**

36. Plaintiff hereby incorporates paragraphs "1" through "35" as though fully set forth herein.

37. Plaintiff, by contract, is the copyright owner of the exclusive rights of distribution and public performance as to commercial establishments to the broadcast, including all undercard matches and the entire television Broadcast for Wilder v. Ortiz II, scheduled for November 23, 2019, via closed circuit television and via encrypted satellite signal. The Certificate of Registration was filed with the U.S. Copyright Office on January 2, 2020 under Registration Number PA 2-219-370. The Broadcast originated via satellite uplink and was subsequently re-transmitted to cable systems and satellite companies via satellite signal.

38. As a copyright holder of the above mentioned rights to the Broadcast, Plaintiff has rights

to the Broadcast, including the right of distribution as well as the licensing to commercial establishments for the right to publicly exhibit same.

39. Defendants never obtained the proper authority or license from Plaintiff to publicly exhibit the Wilder v. Ortiz II Broadcast on November 23, 2019.

40. Upon information and belief, with full knowledge that the Broadcast can only be exhibited within a commercial establishment by the purchasing of a license from Plaintiff, Defendants and/or their agents, servants, workmen or employees illegally intercepted and/or publicly displayed the Broadcast and exhibited same in her commercial establishment on November 23, 2019.

41. Specifically, upon information and belief, the Defendants and/or their agents, servants, workmen and employees unlawfully obtained the Broadcast, enabling Defendants to publicly exhibit the Broadcast without paying the appropriate licensing fee to Plaintiff.

42. By reason of the aforementioned conduct, the Defendants willfully violated 17 U.S.C. §501(a).

43. By reason of the aforementioned Defendants violation of 17 U.S.C. §501(a), Plaintiff has a private right of action pursuant to 17 U.S.C. §501 (b).

44. As a result of Defendants willful infringement of Plaintiff's copyrights and exclusive rights under copyright, Plaintiff is entitled to damages, in the discretion of this Court, under 17 U.S.C. §504(c)(1) and 504(c)(2), of up to the maximum amount of $150,000.00.

45. Plaintiff has no adequate remedy at law to redress the violations set forth above.

**WHEREFORE**, the Plaintiff requests that judgment be entered in its favor and against the Defendant, *jointly and severally,* granting to Plaintiff the following:

(a) Declare that Defendant's unauthorized exhibition of the November 23, 2019 Wilder/Ortiz II Program, violated the Federal Communications Act and that such violations were committed willfully and for purposes of Defendants' direct or indirect commercial advantage or for private financial gain,

(b)  On the first cause of action, statutory penalties in an amount, in the discretion of this Court, against Defendants, *jointly and severally*, for a recovery between $1,000 and $10,000 as to each Defendant pursuant to 47 U.S.C. §605 and enhanced damages of up to $100,000.00 for each defendant, *jointly and severally*, for their willful violation of 47 U.S.C. §605; and

(c) Attorney's fees, interest, costs of suit as to each Defendant pursuant to 47 U. S. C. § 605 (e)(3) (B) (iii).

(d) On the second cause of action, statutory penalties in an amount, in the discretion of this Court, against Defendants, *jointly and severally*, of up to the maximum amount of $10,000.00 as to each Defendant for their violation of 47 U.S.C. §553 and enhanced damages of up to $50,000.00 for their willful violation of 47 U.S.C. §553; and

(e) Attorney's fees, interest, costs of suit as to each Defendant pursuant to 47 U. S. C. §553 (c)(2)(C).

(f) On the third cause of action, statutory penalties in an amount, in the discretion of this Court, against Defendants, *jointly and severally*, of up $30,000.00 pursuant to §504(c)(1) and enhanced damages in the amount of $150,000.00 pursuant to

§504(c)(2) for their willful violation of 17 U.S.C. §501(a); and

(g) Attorney's fees, interest, costs of suit as to the Defendants pursuant to 17 U.S.C. §505, together with such other and further relief as this Court may deem just and proper.

Dated: February 20, 2020
Ellenville, New York

**JOE HAND PROMOTIONS, INC.**

By: /s/Alexander Z. Lonstein
ALEXANDER Z. LONSTEIN, ESQ. (AL7381)
Attorney for Plaintiff
LONSTEIN LAW OFFICE, P.C.
190 South Main Street: P.O. Box 351
Ellenville, NY 12428
Tel: (845) 647-8500
Fax: (845) 647-6277
Email: Legal@signallaw.com
*Our File No. JHP19-07NY-02*